UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISLAM ATAROUA,<br><br>       Plaintiff,<br><br>      -against-<br><br>ZAKI ISAAC B. TAMIR; TAMIR LAW GROUP, PC; SCOTT M. STRINGER, Comptroller; RICHARD BRISKIN, Claims Examiner; THE CITY OF NEW YORK; CARLTON NEWTON, Warden, Anna M. Kross Center; JOSEPH PONTE, Commissioner, NYC Dept. of Corrections; BILL DE BLASIO, Mayor, City of New York; ROBERT CRIPPS, Supervising Warden,<br><br>       Defendants. | 22-CV-10371 (LTS)<br><br>ORDER OF DISMISSAL |

LAURA TAYLOR SWAIN, Chief United States District Judge:

  Plaintiff, who is incarcerated at Clinton Correctional Facility, is proceeding *pro se* and *in forma pauperis*. Plaintiff's original complaint asserted only state law claims. He alleged that a lawyer he had retained for a 2016 personal injury matter missed the statute of limitations, and that other defendants had failed to respond to his Freedom of Information Law (FOIL) requests. By order dated December 19, 2022, the Court dismissed the action for lack of subject matter jurisdiction and allowed Plaintiff to amend his complaint. Plaintiff filed an amended complaint on January 23, 2023, and the Court has reviewed it. The action is dismissed for the reasons set forth below.

## STANDARD OF REVIEW

  The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's *in forma*

*pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## BACKGROUND

Plaintiff Islam Ataroua alleges the following facts in his amended complaint. On February 2, 2016, while Plaintiff was a pretrial detainee at the Anna M. Kross Center (AMKC), in the custody of the New York City Department of Correction (DOC), he was "involved in an altercation with numerous other incarcerated individuals." (ECF 7 at 3.) "Jane Doe #1" was the DOC employee assigned to the dayroom where the altercation took place, but she was "absent from her post" when it occurred. (*Id.* at 3, ¶ 18.) Jane Doe #1 "knew or should have known that the dayroom, as well as AMKC itself, had a problem with incarcerated individuals attacking one another, and that those in her care would most likely be susceptible to violence if she left her post without someone relieving her from her duties." (*Id.* at 5, ¶ 24.) She "disregarded her duty to protect Plaintiff." (*Id.* at ¶ 21.)

Plaintiff suffered "a laceration to the left side of his face, which required eight stitches." (*Id.* at 4, ¶ 20.) He believes that it was caused by a "jailhouse shank." (*Id.*) Plaintiff was placed in protective custody, which, he argues, reflects that he was "not the ag[g]res[s]or" in the altercation. (*Id.* at ¶ 23.)

Plaintiff contends that Defendants City of New York and the "Supervising Warden" (also referred to in the amended complaint as Robert Cripps and as "Crippin") and "other supervisory officials" failed to "instruct, supervise, control and discipline . . . subordinate officers" in deliberate indifference to Plaintiff's rights under the Eighth and Fourteenth Amendments. (*Id.* at

6, ¶ 33.) Plaintiff has named former Mayor Bill de Blasio, former DOC Commissioner Joseph Ponte, and AMKC Warden Carlton Newton as defendants in the caption of the amended complaint; although Plaintiff does not reference them explicitly in the body of the complaint, this claim against "supervisory officials" appears also to be directed to these defendants.

In 2016, Plaintiff contacted Zaki Isaac B. Tamir of the Tamir Law Group, PC, to assist him in filing a claim with the New York City Comptroller's Office. Tamir filed a notice of claim with the New York City (NYC) Comptroller's Office under claim number 2016PI011097. In February 2020, when Plaintiff was completing a general release in connection with new and unrelated claims against the City of New York, Plaintiff spoke with the attorney representing him in the new action. Plaintiff was informed that, if he had not already filed a lawsuit for any claim arising from the 2016 incident, "the statute of limitations for filing suit for his 2016 claim had likely expired." (*Id.* at 6, ¶ 27.) On March 6, 2021, Plaintiff filed a FOIL request to ascertain the status of his 2016 claim with the NYC Comptroller, filed under claim number 2016PI011097. In response, Plaintiff was directed to contact the attorney who had represented him in that matter.

On December 2, 2022, the Court received the original complaint in this action, which was styled as a malpractice suit against Zaki Isaac B. Tamir, and the Tamir Law Group, PC., and also brought claims against former NYC Comptroller Scott Stringer and Claims Examiner Richard Briskin, under the New York State FOIL, regarding documents that Plaintiff was seeking. The Court dismissed the complaint for lack of subject matter jurisdiction because Plaintiff brought state law claims only, and the Court thus had neither federal question nor diversity jurisdiction of the action. In the amended complaint, Plaintiff repleads his claims that Zaki Isaac B. Tamir, and the Tamir Law Group, PC, misled him and caused him to miss the statute of limitations for his claim, allegedly in violation of Plaintiff's First and Fourteenth Amendment rights. Plaintiff

further alleges that the response to his FOIL request – telling him to contact his counsel for the status of the claim – was inappropriate and constituted retaliation, in violation of his First Amendment rights.

In the amended complaint, Plaintiff names Jane Doe #1; AMKC Warden Newton; former Mayor de Blasio; former DOC Commissioner Ponte; and Supervising Warden Cripps. He also renames the defendants who were sued in the original complaint, Defendants Zaki Isaac B. Tamir; the Tamir Law Group, PC.; Claims Examiner Briskin; former NYC Comptroller Stringer; and the City of New York. Plaintiff seeks damages.

## DISCUSSION

### A. Failure to Protect Claim

Prison officials are required to take reasonable measures to guarantee the safety of prisoners, including protecting them from harm caused by other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). A pretrial detainee asserting a failure-to-protect claim under the Fourteenth Amendment's Due Process Clause must plead two elements: (1) an "objective" element, which requires a showing that the risk of harm is sufficiently serious, and (2) a "mental" element, which requires a showing that the officer knew or should have known of the risk of serious harm but acted with deliberate indifference to that risk. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." (quotation marks omitted)). The mere negligence of a correctional official is not a basis for a claim of a federal constitutional violation under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348

4

(1986); *Morales v. New York State Dep't of Corr.*, 842 F.2d 27 (2d Cir. 1988) ("[A] prisoner cannot base a federal civil rights action brought under 42 U.S.C. § 1983 on claims of a negligent failure of state prison officials to protect him from injury at the hands of another inmate").

A plaintiff may satisfy the objective element by showing either a substantial risk of harm from "a specific assailant" or "a more general risk of harm due to the conditions at the time of the attack." *Hurst v. Perez*, No. 15-CV-4703, 2017 WL 187532, at *2 (S.D.N.Y. Jan. 13, 2017). In *Hurst*, a correctional officer left the inmates unattended in the courtyard while she unlocked a door, and plaintiff was attacked when the inmates began to walk inside. The district court noted that the plaintiff had not alleged (1) that "inmates [were] unattended for any significant period of time"; (2) that "he was in custody with particularly violence-prone or dangerous inmates" or alleged facts about "the security level of the prison"; (3) that the officer had any reason to believe plaintiff was at substantial risk of attack; or (4) that Plaintiff "had expressed any fear for his safety prior to the attack" or had "requested a transfer." *Hurst*, 2017 WL 187532, at *3 (S.D.N.Y. Jan. 13, 2017). The district court granted defendants' motion to dismiss, concluding that Plaintiff had merely alleged negligent supervision, which was insufficient to establish Section 1983 liability.

Here, Plaintiff similarly does not plead facts suggesting an objectively serious risk of harm. He states that Jane Doe #1 was not at her assigned post when a fight broke out but there are no facts about how long detainees were left unattended, whether the correction officer had any reason to believe there was a particular risk to plaintiff, or that the detainees left unattended had a high risk level or were "particularly violence-prone or dangerous."[1] Plaintiff's claim thus

---

[1] *See, e.g., Grant v. Burroughs*, 2000 WL 1277592, at *3 (S.D.N.Y. Sept. 8, 2000) (noting that negligent supervision is insufficient to establish Section 1983 liability); S*ullivan v. Graham*, 2011 WL 4424355, at *8 (N.D.N.Y. Aug. 5, 2011), *report and recommendation*

appears to be on all fours with *Hurst*, in which the district court concluded that the correction officer's alleged negligence could not be the basis for a Section 1983 claim for failure to protect.[2] Plaintiff's allegations do not state a claim on which relief can be granted against Jane Doe #1 under Section 1983. Any claim that Plaintiff has against Jane Doe arises under state law, such as a claim for negligence, and Plaintiff's state law claims are addressed below.

Even if Plaintiff had stated a Section 1983 claim for Jane Doe #1's failure to protect him in 2016, such a claim appears on the face of the complaint to be time-barred. The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. See N.Y. C.P.L.R. § 214(5). Generally, a plaintiff's claim accrues three years after the incident, which is the date when he knew or had "reason to know of the injury that is the basis of the claim." *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

In federal civil rights actions that borrow state statutes of limitations, state tolling rules generally apply. *Hardin v. Straub*, 490 U.S. 536, 539, (1989) (federal courts "should not unravel state limitations rules unless their full application would defeat the goals of the federal statute."). New York provides by statute for circumstances in which a limitations period may be tolled. *See,*

---

*adopted*, 2011 WL 4424350 (N.D.N.Y. Sept. 21, 2011) ("[E]ven if defendants were negligent in failing to staff the yard with more people or subject more individuals to metal detection searches, such staffing shortcomings could not serve as a basis for constitutional relief."); *Matthews v. Armitage*, 36 F. Supp. 2d 121, 126 (N.D.N.Y. Jan. 25, 1999) ("Additional precautions might have prevented the stabbing here, but the failure to institute such precautions at most constituted negligence.").

[2] Although the plaintiff in *Hurst* was a state prisoner, whose claims arose under the Eighth Amendment, and Plaintiff alleges that he was a pretrial detainee, whose claims arose under the Fourteenth Amendment, the analysis of the objective risk element is the same. *Darnell*, 849 F.3d at 30 (citing *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

6

*e.g.*, C.P.L.R. § 204(a) (where commencement of an action has been stayed by court order), *id.* at § 204 (where a dispute has been submitted to arbitration but is ultimately determined to be non-arbitrable), *id.* at § 207(3) (defendant is outside New York at the time the claim accrues), *id.* at § 208 (plaintiff is disabled by infancy or insanity), *id.* at § 210 (death of plaintiff or defendant).

A plaintiff is usually not required to plead that the case is timely filed, *Cortes v. City of New York*, 700 F. Supp. 2d 474, 482 (S.D.N.Y. 2010), but dismissal is appropriate where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal under 28 U.S.C. § 1915(d) on statute of limitations grounds); *Baker v. Cuomo*, 58 F.3d 814, 818-19 (2d Cir. 1995) (*sua sponte* dismissal is "appropriate if it appears from the face of the complaint that the action is barred . . . by the statute of limitations" ), *vacated in part on other grounds*, 85 F.3d 919 (2d Cir. 1996).

Plaintiff can be understood as asserting that his civil rights claim arising in 2016 was not filed earlier due to the actions of Tamir and the Tamir Law Group, PC. These allegations are insufficient to toll the limitations period. First, Plaintiff does not allege that he engaged Tamir and the Tamir Law Group, PC, to file a civil rights action against Jane Doe or others, in federal or state court. Instead, Plaintiff alleges that he "engaged Tamir and the Tamir Law Group, PC, to assist him in filing a claim with the New York City Comptroller's Office," which he states that Tamir did. (ECF 7 at ¶ 26.) It is unclear what Tamir told Plaintiff, if anything, about bringing a civil rights suit in federal or state court. Whether or not a malpractice action will lie, these allegations of attorney negligence are insufficient for tolling. *See, e.g.*, *Carter v. Unv. of C.T.*, 264 F. App'x 111, 112 (2d Cir. 2008) (holding that although equitable tolling was unavailable the plaintiff "is not, however, left without any remedy for his former attorney's misconduct.

[The plaintiff] remains free to pursue a malpractice claim against the attorney, through which he could presumably seek damages arising from the loss of his ability to prosecute his Title VI claim."); *Williams v. Vaccaro*, No. 1:19-CV-03548 (CM) (SDA), 2022 WL 2179726, at *6 (S.D.N.Y. June 1, 2022) ("To the extent that Plaintiff has been deprived of a potentially viable claim . . ., he may have a remedy in the form of a malpractice suit against his former attorneys, but that does not entitle him to prosecute his long-neglected claims"), *report and recommendation adopted*, No., 2022 WL 2181647 (S.D.N.Y. June 16, 2022).[3]

Second, Plaintiff says that he learned on or about February 4, 2020, that "the statute of limitations for filing suit for his 2016 claim likely [had] expired." (*Id.* at 6, ¶ 27.) Plaintiff apparently did not bring his Section 1983 claim against Jane Doe, however, until nearly three years later, when he filed this amended complaint, received on January 23, 2023 (ECF 7).[4] Plaintiff thus delayed filing a Section 1983 civil rights claim for several years after he learned that it was likely time-barred. The facts alleged in the amended complaint do not show that Plaintiff has any recognized basis for equitably tolling the limitations period. The Court therefore dismisses Plaintiff's Section 1983 claim that Jane Doe failed to protect him, in violation of his constitutional rights, for failure to state a claim and as time-barred.

**B.    Claims against City of New York**

Plaintiff also sues the City of New York for the injuries that he suffered in 2016. When a plaintiff sues the City of New York or another municipality under Section 1983, it is not enough

---

[3] *See also Davis v. Klein*, 88 N.Y.2d 1008, 1009-10 (1996) ("In order to establish a prima facie case of legal malpractice, a plaintiff must demonstrate that the plaintiff would have succeeded on the merits of the underlying action but for the attorney's negligence.").

[4] The Court received Plaintiff's original complaint, which was a malpractice action that did not raise the underlying 2016 claim, on December 2, 2022. (ECF 2.) Because Plaintiff is incarcerated, under the "mailbox rule" these dates would be slightly earlier, when he gave the pleadings to prison officials for mailing.

for the plaintiff to allege that the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Here, Plaintiff's allegation that Jane Doe #1 was away from her post when a fight broke out does not state a claim under Section 1983 for a violation of his constitutional rights. This forecloses a claim that the City of New York was responsible under Section 1983 for a violation of Plaintiff's constitutional rights based on the same facts. *See, e.g.*, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the department regulations might have authorized the [constitutional violation] is quite beside the point."); *Curley v. Vill. of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001) ("[A] municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights.").

Moreover, Plaintiff merely alleges generally that "Defendants City of New York, Cripp[s] and other supervisory officials by failing to instruct, supervise, control and discipline

9

[their] subordinate officers deliberately disregarded Plaintiff's rights in violation of the. . . Fourteenth Amendment." (ECF 7 at 6, ¶ 33.) Plaintiff's general allegations, which do not include any factual particulars, are insufficient. "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

Finally, even if the Court granted Plaintiff a further opportunity to amend his complaint to replead his Section 1983 claim arising in 2016, the statute of limitations analysis described above also applies to this claim against the City of New York. This claim is barred by the three-year limitations period, and despite Plaintiff's arguments for equitable tolling, the facts alleged in the amended complaint do not show that Plaintiff has any recognized basis for equitable tolling.

For all of these reasons, Plaintiff's allegations fail to state a claim against the City of New York under Section 1983 in connection with the 2016 incident.

C. **Supervisory Defendants**

Plaintiff also sues former Mayor Bill de Blasio, former DOC Commissioner Joseph Ponte, AMKC Warden Carlton Newton, and Supervisory Warden Robert Cripps for the harm Plaintiff suffered in 2016. To state a claim under Section 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep' t of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted).

A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official . . . ." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff alleges that "defendant Jane Doe #1 was acting . . . under the direction and control of Defendant City of New York, Cripp[s] and other supervisory officials." (ECF 7 at 6, ¶ 31.) In so alleging, the Plaintiff attempts to hold supervisory officials liable on a *respondeat superior* theory – which is not available for a constitutional claim under Section 1983. *Iqbal*, 556 U.S. at 676. And as set forth above, Plaintiff's allegation that "Cripp[s] and other supervisory officials" violated his rights in 2016 "by failing to instruct, supervise, control and discipline [their] subordinate officers" (ECF 7 at 6, ¶ 33) does not include any facts showing how Defendants were personally involved in violating his rights. These Section 1983 claims also suffer from the same timeliness problems raised above. Plaintiff's Section 1983 claims against Defendants Ponte, de Blasio, Newton, and Cripps are therefore dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.    First Amendment Claims**

    **1.    Former NYC Comptroller Stringer and Claim Examiner Briskin**

To state a First Amendment retaliation claim, a private citizen must allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir.

2001); *see Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) ("Regardless of the factual context, [courts] have required a plaintiff alleging retaliation to establish speech protected by the First Amendment.").

Plaintiff alleges that Former NYC Comptroller "Stringer and [Claim Examiner] Briskin, by directing Plaintiff to contact his former counsel rather than provide him documents through FOIL, retaliated against Plaintiff in violation of the First Amendment." (ECF 7 at 10, ¶ 35.) Plaintiff does not identify what First Amendment-protected interest he alleges he was retaliated against for exercising. Even if the Court assumes that Plaintiff had a First Amendment interest in a civil rights lawsuit for his 2016 injury, Plaintiff's allegations do not include any facts suggesting that former Comptroller Stringer or Claim Examiner Briskin took actions that "were motivated or substantially caused by his exercise of that right." *Curley*, 68 F.3d at 73. Plaintiff's allegations thus do not state a claim that Defendants Stringer or Briskin retaliated against Plaintiff for the exercise of his First Amendment rights.

### 2.     Defendant Tamir and the Tamir Law Group, PC

Plaintiff also alleges that "Defendant Tamir and the Tamir Law Group, PC, by misleading Plaintiff to believe that he was being represented by them and that a matter was being pursued by them, denied Plaintiff access to the Court in violation of the First and Fourteenth Amendments." (ECF 7 at 7, ¶ 34.)

A claim for relief under section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties therefore generally are not liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

12

Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), an attorney's representation of an individual does not constitute the degree of state involvement or interference necessary to establish state action, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender. *See Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 324-25 (1981)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (holding that legal aid organization ordinarily is not a state actor for purposes of § 1983). As Defendants Tamir and the Tamir Law Group, PC, are private parties, Plaintiff cannot state a claim against these defendants under Section 1983 for violating his rights under the First or Fourteenth Amendments.

**E.    State Law Claims**

Plaintiff brings a state law claim against Jane Doe #1 for negligence.[5] His allegations can also be construed as asserting state law claims against Tamir and the Tamir Law Group, PC. for legal malpractice or other violations. It is unclear if Plaintiff is also asserting state law claims against Briskin and Stringer arising from his FOIL request.

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction."

---

[5] State law claims for damages against a correction official may be subject to the defense that defendants were acting within the scope of their employment and therefore damages claims against the correction official can be brought only in the New York Court of Claims. N.Y. Corr. Law § 24; *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996); *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013).

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

## CONCLUSION

Plaintiff's claims under 42 U.S.C. § 1983 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court declines, under 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction of Plaintiff's state law claims and dismisses these claims without prejudice.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment in this matter.

SO ORDERED.

Dated: February 23, 2023
        New York, New York

                                       /s/ Laura Taylor Swain
                                       LAURA TAYLOR SWAIN
                                       Chief United States District Judge